Mr. Justice Shepard
delivered the opinion of the Court:
This is one of the cases argued and submitted with the case of Allman v. The District of Columbia, ante, p. 8, and, like it, comes before us to be heard in the first instance. The assessment in this case is for the improvement of an alley or alleys in square 501, in which petitioner’s lot is situated. This square contains four alleys. The first, which is fifteen feet wide and two hundred and sixty long, runs north and south through the square. The second runs east and west, and is thirty feet wide and three hundred feet long. The third and fourth are twenty-seven feet wide and one hundred and sixteen feet long; their location does not appear. Four lots in the square fronting L and M streets abut on alley No. 1, making an aggregate linear measurement of five hundred and sixty feet. One of these lots belonged to petitioner. There are forty-two other lots in the square, the combined frontage of which upon alleys 2, 3 and 4 amounts to 1080 feet.
■ On February 28,1890, George Gilmore, the owner of a part of a lot abutting for sixteen feet on alley No. 2, petitioned the Commissioners to grade and pave the “ alley ” in square 501. The Health Officer reported that “the interests of the public health demand the paving of the alley,” whereupon the Commissioners ordered “the alley in square 501 to be *28 paved with asphalt blocks at estimated cost of $5,187.81.” December 17, 1890, the work was certified as done at a cost of $5,273.88. January 6, 1891, a special assessment was made and entered against petitioner, as for a frontage of 154.63 feet upon the improvement, in the sum of $254.79. January 20, 1891, notice of the amount of the assessment was delivered to petitioner’s wife. The Commissioners treated the four alleys as one, paved them all, and assessed the lot owners with one-half the total cost upon the basis of frontage. The alleys vary in width as well as length, and hence the proportion of cost, if assessed upon each alley separately, according to frontage, would have varied.
The provisions of the appropriation act of 1890, under which this work was done, are much more elaborate than those of the act of 1888, under which the Allman case originated. The appropriation is limited to the improvement and repairs of alleys and sidewalks and the construction of sewers “under the permit system.” The proviso “that the property owners requesting such improvements shall pay one-half of the total cost,” is retained. The second proviso authorizes the Commissioners to order such of the above enumerated work as in their opinion is necessary for the public health; safety or comfort, and to pay the same from the sum appropriated. One-half this cost is then required to be assessed against the abutting property, and “levied pro rata upon said property according to its linear frontage, upon such terms and regulations as to notice to proprietors and the methods and terms of such notice as shall seem to the Commissioners of the District of Columbia right and proper, due notice of such terms and regulations being given by publication thereof in some newspaper published in the city of Washington, for such time as said Commissioners shall prescribe.” Payments are required to be made as follows: One-third within sixty days from service of notice of the assessment, one-third within one year, and the remaining third within two years from the date of service of the notice of assessment, with interest at ten per cent, per annum from *29 and after the expiration of thirty days after service of the said notice.
There is a provision with regard to sales in connection with sales for other taxes, which it is not necessary to enumerate. The concluding paragraph makes an appropriation of $50,000 for paving and curbing the roadway of streets, upon the payment in advance by the owners of abutting property of one-half of the cost thereof.
The Commissioners issued and published what they called “ Terms and Regulations of ‘ Compulsory Permit ’ Assessments,” in which among other things it was provided that “upon the completion of the entry of an assessment upon the records of this office, the special assessment clerk shall proceed to cause notice to be served to each proprietor of property so assessed.” The mode and manner of service is then provided. The notice is required to “ state the number of the square, the lot, or part of lot or parcel of ground and lineal feet of frontage thereof upon the work so assessed, the name of the last reported owner thereof, the amount of the assessment charged against said property, and a copy of the section of the act of Congress relative to permit work and assessments therefor.” The notice left with petitioner’s wife follows this form.
1. The statute quoted above provides for notice to the owners of property abutting on the line of the work, leaving “ the terms and regulations ” thereof to the discretion of the Commissioners. It further provides that due notice of the terms and regulations shall be published in some newspaper in the city of Washington.
It appears that the Commissioners adopted certain regula-. tions for the government of the work of improvement in general, and published them properly. These regulations, however, do not provide for notice to the owner of property at any time before the completion of the assessment. They seem to contemplate that it shall not be given until after the work is done and the assessment completed and entered of record. This was the character of the notice attempted to be *30 served on petitioner through his wife. It is not necessary' to discuss whether this was service on the petitioner. This notice, if the service be considered sufficient, is not that contemplated by the law. It must be presumed that the notice contemplated by the law was that character of notice necessary in “ due process of law ” to be given at some serviceable stage of the proceedings'. The notice given was a demand for payment merely, as a preliminary to sale if not complied with.
2. It will be remembered that this block or square had four alleys running in different directions and of different widths. Petitioner’s lot ran along one of them and possibly abutted for some few feet upon another. The improvement was made as of one alley, and the cost of the whole work apportioned among all the lot owners according to their proportion of the gross frontage.
We cannot presume that Congress had in view a work like this when it prescribed the assessment in proportion to frontage. To make the assessment by this rule, it must be held that each lot was to be assessed for the paving only of the alley upon which it fronted, and for no other. The mode adopted is demonstrably unjust, especially in view of the fact that the alleys were not all of the same width, and we cannot presume that Congress intended to authorize it, in the absence of an express declaration to that effect.
The principles upon which our conclusions are founded will be.found in the opinion in the case of Allman v. The District, ante, p. 8. Upon both the grounds stated above, we hold that the assessment was without authority in law, and therefore void.

The cause must be remanded to the Supreme Court of the District of Columbia, with direction to enter' a judgment granting the prayer and motion of the petitioner in accordance with this opinion ; and it is so ordered.